STATE, EX REL. C. A. SORENSEN, ATTORNEY GENERAL, V. FIRST STATE BANK OF ALLIANCE, APPELLEE: CHARLES T. HAAS, INTERVENER, APPELLANT.

FILED JULY 22, 1932. No. 28036.

*Mitchell & Gantz,* for appellant.

*F. C. Radke, Barlow Nye* and *M. C. Radke, contra.*

Heard before ROSE, GOOD and DAY, JJ., and FROST and MESSMORE, District Judges.

FROST, District Judge.

In this action Charles T. Haas seeks to collect a draft drawn in his favor upon its Omaha correspondent by the First State Bank of Alliance, Nebraska. It appears from the evidence that Haas represented certain nonresident heirs who were entitled to the sum of $6,994.89 under a decree in partition. There were other heirs whose rights had been established in the same decree to whom the referee had paid their share. The amount due the nonresident heirs apparently was not paid directly to them by the referee because the proper authority did not appear of record authorizing Haas to represent them. The amount due them was paid to the clerk of the court and deposited by him in the First State Bank of Alliance under the name of "W. C. Mounts, Clerk." Later, when Haas was able to establish his authority, the clerk drew a check upon his account in the First State Bank for the amount due these heirs and received from the First State Bank a draft drawn upon its Omaha correspondent. The draft was made payable to Haas and delivered to his local representative, Mr. Ira E. Tash, who had requested that payment be made in that way. The draft was forwarded by Tash to Haas at Portland, Oregon; but before it had made the rounds for proper presentation to the Omaha bank the First State Bank had failed. The payment of the draft was therefore refused, although there was at all times after its issuance funds in the Omaha bank sufficient to meet it.

Mr. Charles Brittain, vice-president of the First State Bank and one of its executive officers, took an active part in the distribution of the funds received by the referee in the partition suit, assisting that referee in figuring and paying out to the several heirs their distributive shares. He also knew of the payment into court of the part belonging to the foreign heirs and of its deposit by the clerk in his account in the First State Bank. He also was fully cognizant of the circumstances connected with the issuance of the draft by his bank in response to the check of the clerk of the court.

Charles T. Haas, in behalf of the nonresident heirs, intervened in the liquidation suit against the First State Bank and filed a claim in their behalf. This claim was allowed by the district court in a class along with the depositors, but a preference over them was denied. It is of this denial that the appellant and intervening claimant, hereinafter referred to as an intervener, complains.

Since the case was argued and submitted this court has decided two cases, each of which involves the claim of a preference in behalf of purchasers of drafts in banks which failed before the drafts could be collected. *State v. State Bank of Belvidere*, 122 Neb. 797, and *State v. First State Bank of Alliance, ante*, p. 23 In each of these cases the purchaser of the draft was denied a preference over other holders of exchange. These decisions materially limit the questions to be disposed of in this opinion.

In the case of *State v. State Bank of Belvidere, supra,* there were two interveners, each of whom sought a preference over the bank depositors; and their claims were allowed by the district court, a trust being declared in the funds payable to them. The receiver appealed to this court where the action of the trial court was reversed. In the case of one of the interveners a check was given in the purchase of the draft while in the other cash was paid therefor. Thus this court has already decided adversely that, if cash is paid to the bank for a draft and its funds are increased to the extent of the draft issued, a trust accrues in behalf of the owner of that draft. The court deems it immaterial whether the draft is paid for by check or by cash as the fact that the funds of the bank issuing the draft are not decreased is not sufficient in itself to create a trust in favor of the purchaser of the draft where the issuing bank fails before the draft is paid. The court in this opinion declares that the purchaser of a bank draft is a purchaser of a bank's credit and is entitled to share with the depositors and other holders of exchange in the assets of a failed state bank, but that such purchaser, in the absence

of special circumstances, is not entitled to have his claim allowed as a trust fund. It will be noted that under this decision the intervener's right to have his credit allowed as a trust fund depends entirely upon his ability to show some special circumstances giving him this right.

In the second Nebraska case, *State v. First State Bank of Alliance, supra,* Paine, J., in his opinion refers to the case of *State v. State Bank of Belvidere, supra,* and says a similar question is there presented for the determination of the court and the decision was rendered holding that the claimant's draft was not entitled to a preference over the claims of general depositors.

The intervener contends that the circumstances surrounding the payment of his clients' portion to the clerk of the court; of its deposit by that clerk in the bank, and, later, of the paying out of such funds by means of a draft on the bank's Omaha correspondent, all to the knowledge of an executive officer of the First State Bank, created a condition entitling the intervener to a preference over the other holders of exchange. We agree that the conditions surrounding the deposit of the money in the bank go a long way to establish the trust character of the funds so deposited. *Sallaske v. Fletcher,* 73 Wash. 593; 47 L. R. A. n. s. 320.

"Trust funds do not lose their character as such by being deposited in bank by the trustee to his own account." *Cady v. South Omaha Nat. Bank,* 46 Neb. 756.

"A depositary of a trust fund who parts with no consideration and is not misled to his prejudice by reason of the deposit, is bound to restore the fund to the true owner on demand, although such deposit was made by an agent or trustee and, until such demand, the depositary had no notice of its true character." *Union Stock Yards Nat. Bank v. Campbell,* 2 Neb. (Unof.) 72.

The intervener quotes at great length from *National Bank v. Insurance Co.,* 104 U. S. 54. In this case A. H. Dillon, Jr., was general agent at Baltimore, Maryland, for the insurance company. His account was carried on the

books of the bank under the name of "A. H. Dillon, Jr., Gen'l Ag't," and his checks were signed in that name. He was accustomed to remit to his company twice a month. Dillon later became heavily indebted to the bank and the bank charged up his indebtedness against this deposit. It thus appears the contest was not between depositors but between the bank and the insurance company who was the true owner of the deposit. The court, having in mind that the funds were those of his company and not those of the depositor, refused to sanction the claim of the bank over that of the insurance company whom the bank knew to be the principal, while Dillon was only the general agent of the company.

The different parties have filed extensive briefs in support of their several contentions. These have been carefully considered and the writer of this opinion has delayed its final draft while making an extensive search of the authorities as relates to the "special circumstances" shown in evidence as they bear upon the claim of the intervener. The conclusion reached is that the circumstances do not justify granting the intervener a preference over depositors. It is useless to cite a long list of authorities as this court has, in the case of *State v. State Bank of Belvidere, supra,* decided the main questions involved herein. Those who care to pursue the subject further are referred to Annotations, Trust or Preference in Respect of Money Used to Purchase Exchange or to be Transmitted, 16 A. L. R. 190, and a later continuation, 57 A. L. R. 1168.

Many of the cases which support the position of the intervener are where a special deposit had been made. Under those circumstances the title of the fund or whatever it was that was deposited remains in the depositor; while in the case of a general deposit the title passes to the depositary. The fact that a fund is subject to check implies it is a general deposit, in which case the depositor is a creditor and the bank a debtor. *Lamro State Bank v. Farmers State Bank,* 34 S. Dak. 417.

However, the intervener by asking the clerk to pay out the trust fund to him in the form of a draft and by accepting such draft after its issuance lost all right to claim a preference. By soliciting or accepting that draft he became a buyer of the bank's credit and from that time on was a creditor of the bank and his clients were no longer beneficiaries of a trust fund.

We therefore conclude that there are no "special circumstances" disclosed by the record that justify us in holding that the intervener is entitled to a preference over general depositors. The judgment of the district court is right and is hereby

AFFIRMED.