OMAHA NATIONAL BANK, APPELLANT, V. BRADY STATE
. BANK ET AL., APPELLEES.

FILED JULY 1, 1925.   No. 23202.

1. **Banks and Banking**: COLLECTION: AGENT OF SENDER. Where a
bank receives an instrument for collection and remittance, it
becomes the agent of the sender for such purpose.

2. ———: ———: CHECK AS PAYMENT. The acceptance by a
collecting bank of a check drawn on another bank, in the ab-
sence of a specific agreement that such check is to be accepted
in payment of an instrument placed in the hands of such bank
for collection, is presumed in law to be on condition that the
check is good. If the check is dishonored, no payment is effected.

3. ———: ———: ———. Where a collecting bank receives
a check drawn on another bank tendered in payment of an in-
strument placed in its hands for collection and remittance, and
where the collecting bank, in the belief that the check will be
paid when presented, stamps the instrument paid, but does not
surrender it to the debtor, and thereupon mails its own check to
the sender of the instrument, and where the check given by the
debtor to the collecting bank is promptly presented and is dis-
honored, the collecting bank may stop payment on its check with-
out incurring liability thereon, and return the instrument placed
in its hands for collection.

APPEAL from the district court for Douglas county:
WILLIS G. SEARS, JUDGE. *Affirmed.*

*Ralph G. Coad* and *Stout, Rose, Wells & Martin,* for ap-
pellant.

*John P. Breen* and *Morsman, Maxwell & Haggart, contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD and
EVANS, JJ., and REDICK, District Judge.

DAY, J.

Action in the district court for Douglas county by the
Omaha National Bank, plaintiff, against the Brady State
Bank of Brady, Lincoln county, Nebraska, and the United
States National Bank of Omaha, defendants, to recover
upon a check issued by the Brady State Bank in favor of
the Omaha National Bank, drawn on the United States

National Bank. The case was submitted upon a stipulation of facts, and resulted in a judgment in favor of the defendants. Plaintiff appeals.

On January 5, 1920, the Chevrolet Motor Company, doing business at Omaha, drew a sight draft on C. M. Trotter, its debtor at Brady, Nebraska, for $1,898, payable to the Omaha National Bank, and delivered the same to the latter bank for collection. The latter bank sent the draft to the Brady bank for collection and remittance. On January 20, 1920, Trotter gave his check to the Brady bank for $1,898, drawn on the First National Bank of North Platte, to take up the sight draft. The Brady bank, believing the check to be good, stamped the sight draft "paid," but did not deliver it to Trotter. On January 20, 1920, before the Brady bank had received returns on Trotter's check, it drew its check in favor of the Omaha National Bank for $1,898, drawn on the United States National Bank, and mailed the same to the Omaha National Bank. After sending its check to the Omaha National Bank, the Brady bank received notice from the First National Bank of North Platte that the Trotter check was not paid for want of funds, and thereupon the Brady bank notified the United States National Bank to stop payment of its check drawn in favor of the Omaha National Bank. The Brady State Bank thereupon returned the sight draft to the Omaha National Bank with full explanations of the transaction. Meanwhile the Omaha National Bank presented the Brady State Bank check to the United States National Bank for payment, which was refused on the ground that payment thereon had been stopped by the Brady bank. On receiving the check from the Brady bank, the Omaha National Bank credited the Chevrolet Motor Company with the amount of the collection, but charged the same back immediately upon discovering that the payment of the Brady bank check had been stopped. Thereupon this action was commenced.

By an arrangement between the Omaha National Bank and the Chevrolet Motor Company, the action was continued in the name of the Omaha National Bank.

Omaha Nat. Bank v. Brady State Bank.

We pass the question of jurisdiction over the person raised by the Brady bank, as no doubt all of the parties would prefer a decision based on the merits of the case. We are of the view, however, that no cause of action was stated against the United States National Bank.

Upon the oral argument counsel for appellant stated that no claim was made based upon the possible negligence of the collecting bank, but that the only question in the case was whether the Brady bank had any authority to accept anything but money in payment of the sight draft. It was argued that, by accepting Trotter's check in lieu of money, it thereby became liable to the same extent as though money had been paid by Trotter.

The stipulation of facts recites, among other things, that the officers of the Brady bank, if called as witnesses upon the trial of the case, would testify, if permitted to do so, that the Brady bank did not take or intend to take the Trotter check in absolute and unconditional payment of the sight draft, but took such check for collection in the expectation and belief that the check was good and would be paid upon its presentation to the First National Bank of North Platte. It was also stipulated: "In the usual course of its custom and bank collection business, the said Brady State Bank received from the said Trotter said check on January 20, 1920, and sent the same to the First National Bank of North Platte for collection."

Under the facts stated it is clear that the Brady bank was the agent of the Omaha National Bank for the purpose of collecting the sight draft.

It is a general rule, equally applicable to a bank acting as collecting agent, that, unless otherwise instructed, an agent for collection has no authority to receive in payment anything but cash, and when he does accept anything other than cash in payment he will be liable to his principal for any loss the latter may suffer. This rule is applicable to banks acting as collecting agents. 3 R. C. L. 616, sec. 245.

But this rule does not prevent the agent from conditionally accepting a check in discharge of the instrument he

holds for collection. In *Bellevue Bank v. Security Nat. Bank,* 168 Ia. 707, it was held: "The naked act of accepting a check in payment of a note is presumed in law to be on condition that the check is good. If the check is dishonored, no payment is effected."

In discussing the principle involved in the case before us, it was said in *Griffin v. Erskine,* 131 Ia. 444, 451:

"Checks, drafts, and other bills of exchange are the means of transferring the money in adjusting nearly all commercial transactions, and in authorizing an agent, whether a bank or individual, to make collections, it may be assumed in the absence of instructions to the contrary that the authority is to be executed in the manner usual and customary in the commercial world. While the agent may not accept anything but the actual cash in satisfaction of the claim, he may receive a check or draft, negotiable and payable on demand, which he has good reason to believe will be honored upon presentation, as a ready and more convenient means of obtaining the money in conditional satisfaction of the debt. Such a payment offers no greater temptations to the agent than payment in cash to which ordinarily it is equivalent. If honored by the drawee, payment relates back to the time of delivery. If not honored, the creditor has parted with nothing by reason of conduct of his agent; for, though the agent may receive such paper as conditional payment, he is not permitted, on its strength, to deliver conveyances, leases, or other valuables at the risk of his principal."

In *Steinhart v. National Bank,* 94 Cal. 362, it was held: "When a creditor takes a note or check for an antecedent debt, it does not operate to extinguish the debt, unless it is received by express agreement as payment."

The same principle is announced in *National Life Ins. Co. v. Goble,* 51 Neb. 5.

For cases bearing on the question being considered, see *Inter-State Nat. Bank v. Ringo,* 72 Kan. 116; *Savings Bank v. National Bank,* 98 Tenn. 337; *Farmers Bank & Trust*

*Co. v. Newland,* 97 Ky. 464; *United States Nat. Bank v. Shupak,* 54 Mont. 542.

We will not prolong this opinion by distinguishing the cases cited by appellant from the case at bar. Most of them present a situation where the check offered was accepted by the collecting bank in payment of the instrument, and the instrument held for collection surrendered to the debtor.

In the case before us the Brady bank's acceptance of the check operated only as a conditional payment. Upon the dishonor of the check, the condition failed. The Brady bank did not surrender the sight draft to Trotter, but after the dishonor of the check returned it to the plaintiff. The mere fact that the Brady bank, under the belief that the check was good, stamped the sight draft "paid" is not at all controlling.

The Chevrolet Motor Company and the plaintiff bank are in no worse plight by reason of the Brady bank having stopped payment of its check. Trotter is still liable to the motor company for his debt.

Upon a consideration of the record, we are satisfied that the judgment of the district court is sustained by the evidence and the law applicable to the facts. The judgment is

AFFIRMED.