STATE, EX REL. O. S. SPILLMAN, ATTORNEY GENERAL, V. DUNBAR STATE BANK ET AL., APPELLANTS: JOHN T. MEAD, INTERVENER, APPELLEE.

FILED MAY 9, 1930. No. 26942.

*C. M. Skiles, I. D. Beynon* and *Albert S. Johnston,* for appellants.

*Thomas E. Dunbar, contra.*

Heard before GOSS, C. J., DEAN, GOOD, THOMPSON, EBERLY and DAY, JJ., and DINEEN, District Judge.

DINEEN, District Judge.

This case arises out of the failure of the Dunbar State Bank of Dunbar, Nebraska. Intervener John T. Mead purchased through the defendant Dunbar State Bank, then solvent, liberty bonds in the principal sum of $1,700. These bonds were left at the bank for safe-keeping; and on July 5, 1928, the bank being then insolvent, intervener immediately called at the defendant bank for his bonds, and was informed by Mr. Eiser, special agent for the guaranty fund commission for the state of Nebraska, that the bonds had been sold some time prior by Mr. Murray, the absconded president of defendant bank, and in lieu thereof there were on deposit in defendant bank certificates of deposit for $1,200 and $500 signed by Thomas Murray, president, and dated January 13, 1927. Being so advised, intervener Mead filed his claim with the receiver for defendant bank, based upon said two certificates of defendant bank. The trial court found that the intervener Mead's claim was preferred and was payable out of the depositor's guaranty fund.

The question to be determined in this case is: Was the deposit a good faith deposit within the meaning of the depositor's guaranty law? The bonds were left at the bank and without the knowledge or consent of the intervener were disposed of by an official of the bank. To presume that under the circumstances it was the intent of the intervener to make a general deposit within the meaning of the depositor's guaranty fund we think is too remote. We said in the case of *State v. Clinton State Bank,* 116 Neb. 482:

"Where certain liberty bonds were purchased by a bank for a customer, but were never delivered to the customer,

being left with the bank for safe-keeping, and were subsequently sold by the bank without the consent of the customer, neither the bonds nor their proceeds constituted a deposit within the protection of the state guaranty fund."

In the case at bar, however, certificates of deposit were issued to intervener but retained by the bank, and intervener had no knowledge of the issuance of the certificates until he called for his bonds, about July 5, 1928, at which time the bank was insolvent. While it may be proper to infer that the said certificates were issued as of the date they bear, January 13, 1927, there is no evidence in the record to show when the intervener's bonds were converted by the bank, nor is there evidence sufficient to establish the fact that, when said certificates were issued, in lieu thereof the money or its equivalent was in effect placed in or at the command of the bank, as was necessary under the holding of this court in *State v. Farmers State Bank*, 111 Neb. 117, as follows: "In order to create a deposit which will be protected by the guaranty law, as the term 'deposit' is understood in section 8033, Comp. St. 1922, it is necessary that money or its equivalent shall in intention and effect be placed in or at the command of the bank under circumstances which do not transgress specific limitations of the bank guaranty law."

It therefore follows that the judgment should be reversed and the cause remanded, with instructions to enter a decree in conformance with this opinion.

REVERSED.