**MARLBORO TRUST CO. v. ELLIOTT et al.**

**KRUPNICK v. PEOPLES STATE BANK OF SOUTH CAROLINA et al.**

**No. 4064.**

Circuit Court of Appeals, Fourth Circuit.

Nov. 9, 1936.

D. W. Robinson, Jr., of Columbia, S. C., and R. M. Lindsay, of Bennettsville, S. C. (W. M. Stevenson, of Bennettsville, S. C., and Robinson & Robinson, of Columbia, S. C., on the brief), for appellant.

William M. Shand, of Columbia, S. C. (Benet, Shand & McGowan, of Columbia, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal in the receivership proceedings of the Peoples State Bank of South Carolina from an order denying preferential status to a claim of the Marlboro Trust Company. This claim is based upon two checks of the Peoples State Bank given in settlement of clearance balances upon the customary daily exchange of collection items between the Bennettsville branch of that bank and the Marlboro Trust Company of Bennettsville. One of the checks was given December 31, 1931, and was for a clearing balance of $1,625.78; the other was given January 1, 1932, and was for a clearing balance of $687.04. Both were drawn upon the Columbia branch of the bank and were not paid because the bank failed before they could be presented. The only question in the case is whether the claim based on these checks is entitled to preferential status in the distribution of the assets of the bank by reason of the provisions of the Uniform Collection Code which has been adopted in South Carolina as a part of the statutory law of that state and which provides (Code of Laws of 1932, § 6960, par. 2):

"Except in cases where an item or items is treated as dishonored by nonpayment as provided in section 6958, when a drawee or payor bank has presented to it for payment an item or items drawn upon or payable by or at such bank and at the time has on deposit to the credit of the maker or drawer an amount equal to such item or

items to the account of the maker or drawer thereof or otherwise discharged his liability thereon but without such item or items having been paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debted therefor, the assets of such drawee or payor shall be impressed with a trust in favor of the owner or owners of such item or items for the amount thereof, or for the balance payable upon a number of items which have been exchanged, and such owner or owners shall be entitled to a preferred claim upon such assets, irrespective of whether the fund representing such item or items can be traced and identified as part of such assets or has been intermingled with or converted into other assets of such failed bank."

 The Uniform Bank Collection Code was formulated by the American Bankers Association in 1928 and was designed to remove the confusion arising from conflicting decisions as to the rights and liabilities of collecting banks and to obviate the effect of the decision in Federal Reserve Bank v. Malloy, 264 U.S. 160, 44 S.Ct. 296, 68 L. Ed. 617, 31 A.L.R. 1261, which under existing banking practices virtually made every collecting bank a guarantor of the solvency of its correspondents. State v. Kingston, 215 Wis. 80, 254 N.W. 126; Malcolm v. Burlington City Loan & Trust Co., 115 N.J.Eq. 227, 170 A. 32; note, 99 A.L.R. 1255. It provides that the various banks handling items for collection shall, in the absence of contrary agreement, be deemed agents or subagents of the one who has deposited such items with a bank in the first instance, prescribes the effect to be given certain indorsements of such items, limits the responsibility of banks handling them to that of ordinary care, prescribes the rules of care to be observed in forwarding and presenting, authorizes acceptance in payment of checks or drafts upon another bank, authorizes remittance of proceeds of collection by checks or drafts on another bank, provides for treating as dishonored in proper cases items which have been presented by mail and, finally, makes provision that claims arising out of the checks or drafts received in payment of collection items or sent in remittance of collections shall be entitled to preferential payment in the event of the insolvency of the paying or remitting bank. It will thus be seen that the statute

deals exclusively with the handling of collection items; and the evident purpose of the section here under consideration is to give a preferential claim for the check which the collecting bank is required to accept as an instrumentality of payment.

There can be no question that such a claim is entitled to preference when the check is drawn upon another bank. It was so held in the case of In re Bank of United States, 239 App.Div. 915, 265 N.Y.S. 996, affirmed 264 N.Y. 414, 191 N.E. 491, and State ex rel. Sorensen v. Farmers' State Bank, 125 Neb. 427, 250 N.W. 557, and, what is more important, it was so held in Witt v. People's State Bank of South Carolina, 166 S.C. 1, 164 S.E. 306, 83 A.L.R. 1068, a decision of the Supreme Court of South Carolina by which we are bound in interpreting a statute of that state. While the reasoning of the opinion in the case last cited was addressed to the constitutionality of the statute, there can be no question as to the holding that under it priority is accorded a check drawn upon another bank and used as a means of effecting payment of items presented to the drawing bank for collection.

 The question in the case before us, then, comes to this: Is the priority granted by the statute to a claim based on a check given in settlement of collection items to be denied because such check has been drawn on a branch of the paying bank rather than on an independent bank? There would seem to be no reason for making such a distinction, as, in either case, the check is used as an instrumentality for effecting collection. If it were drawn upon the branch of the bank giving it, or by a bank without branches upon itself, this would not be true, for in such case the acceptance from the bank of a check upon itself would amount to an extension of unconditional credit. Where, however, the check is drawn upon a distant branch at a clearing center and is given and accepted, not as an extension of credit, but as a means of effecting collection, there is no reason why it should not be accorded the same preferential status as though it were drawn upon an independent bank.

And we think that the act clearly contemplates that, for purposes of the Uniform Collection Code, branches of the same bank are to be treated just as though they were independent banks. The first section of the article of the South Carolina Code embracing the uniform collection statute, being

section 6948 of the Code of 1932, provides that: "A branch or office of any such bank shall be deemed a bank for the purpose of this article." Section 6956, in prescribing medium of payment, provides for acceptance of a check or draft upon another bank, and section 6958 provides that a collection item may be treated as dishonored if the bank to which it is presented tenders a check or draft upon itself; and these sections would seem to contemplate that a branch should be treated as an independent bank, as in view of banking practice it could hardly have been intended to exclude the use of checks and drafts on branches in clearing centers in the making of collections and clearances. Section 6950 limits to one day the time within which a bank may revoke a credit given for an item drawn upon itself, which would make revocation of credit practically impossible where an item drawn against an account in one branch is deposited in another, unless the branches are, for the purposes of the collection code, to be treated as independent banks. While the question here involved has not been squarely presented to the Supreme Court of South Carolina, that court has clearly expressed the opinion that a check given under the collection code in payment of collection items, and drawn by one branch of an insolvent bank upon another of its branches, constitutes a preferred claim against the assets of the bank. Lawton v. Lower Main Street Bank, 170 S.C. 334, 170 S.E. 469, 473.

 And we do not think that, where a check has been accepted under such circumstances as appear here, i. e., as a means of effecting collection of collection items, such items can be said to have been "paid or settled for by the drawee or payor either in money or by an unconditional credit given on its books, or on the books of any other bank, which has been requested or accepted so as to constitute such drawee or payor or other bank debted therefor." Of course, when one branch of a bank gives a check drawn upon another branch in payment of a collection item, the bank becomes indebted therefor; but in such case the check has been accepted provisionally and as a means or vehicle of collection, not for the purpose of extending a credit to the bank which gives it. A check or draft thus received in ordinary course of collection, whether drawn upon an independent bank or upon another branch of the same bank, is conditional payment only and does not effect payment unless it is itself paid. Standard Inv. Co. v. Town of Snow Hill (C.C.A.4th) 78 F.(2d) 33, 36, and cases there cited. The purpose of the statute is to give priority of lien where a check thus accepted conditionally in the course of a collection is dishonored; and the purpose of the exception which we have quoted is plainly to deny this preferential status where, instead of accepting the check as conditional payment, the parties treat the collecting process as at an end and accept the unconditional liability of the bank as final payment.

The court below in denying preferential status to the claim pressed too far, we think, the doctrine laid down in Lindsay v. Elliott (C.C.A.4th) 77 F.(2d) 95, and Standard Oil Co. v. Elliott (C.C.A.4th) 80 F.(2d) 158. Neither of these were collection cases. In the first, the claimant drew a check on its deposit account and asked for and secured a cashier's check on another branch of the bank; in the second, filling station operators made deposits in various branch banks and secured cashier's checks on another branch as a means of remitting funds to a central office. In both cases, claimants were merely purchasing exchange for their own purposes, were extending unconditional credit to the bank as a means of securing accommodation in the transfer of funds, and were in no sense engaged in making a collection from the bank under the bank collection code or otherwise. The decisions in South Carolina make it clear that no preference is allowable in such case, even where the exchange draft purchased is drawn on another bank. Ex parte Sanders, 168 S.C. 323, 167 S.E. 154; Ex parte Town of Darlington, 168 S.C. 242, 167 S.E. 412; In re Loan & Savings Bank, 170 S.C. 388, 170 S.E. 474. A very different case is presented, however, where a check is accepted as conditional payment of collection items under banking usage in a collection between banks; and we think it clear that the preferential status prescribed by the collection code was intended to apply to a claim arising out of such transaction, whether the check or draft was drawn upon an independent bank or upon a different branch of the same bank.

For the reasons stated, the order appealed from will be reversed and the case will be remanded, with direction to accord to the claim of the Marlboro Trust Company preferential status under the statute.

Reversed.